*Attorney Grievance Commission v. James Aloysius Powers*, Misc. Docket AG No. 8, September Term 2016

**ATTORNEY GRIEVANCE COMMISSION — DISCIPLINE — INDEFINITE SUSPENSION**

Respondent James Aloysius Powers, violated Maryland Lawyers' Rules of Professional Conduct 1.2, 1.4, 1.6, 1.9, 1.16(d), 3.1, 4.4, and 8.4(a), and (d). These violations stemmed from Respondent's misconduct during representation as well as post-representation of a client, whom the attorney sued. During the litigation against his former client, Respondent revealed information subject to the attorney-client privilege to the detriment of his former client. The appropriate sanction is indefinite suspension.

IN THE COURT OF APPEALS

OF MARYLAND

Misc. Docket AG No. 8

September Term, 2016

_____

ATTORNEY GRIEVANCE
COMMISSION OF MARYLAND

v.

JAMES ALOYSIUS POWERS

Barbera, C.J.
Greene,
Adkins,
McDonald,
Watts,
Hotten,
Getty,

JJ.

_____

Opinion by Greene, J.

_____

Filed:  July 10, 2017

This attorney discipline case involves an attorney who failed to abide by his client's instructions concerning the handling of the client's case, failed to communicate with the client to permit him to make informed decisions about his case, and publicly disclosed confidential client information in the course of suing the former client and a third person in federal court, in a state where neither the former client nor the third party either resided or had any contacts, in an effort to collect attorney's fees.

On April 20, 2016, Petitioner, the Attorney Grievance Commission of Maryland ("Commission"), acting through Bar Counsel, filed a Petition for Disciplinary or Remedial Action against Respondent, James Aloysius Powers, pursuant to Maryland Rule 16-751(a).[1] The Commission charged Respondent with violating the Maryland Lawyers' Rules of Professional Conduct ("MLRPC" or "Rule") 1.2 (Scope of Representation); 1.4 (Communication); 1.6 (Confidentiality of Information); 1.9 (Duties to Former Clients); 1.16(d) (Termination of Representation); 3.1 (Meritorious Claims and Contentions); 4.4 (Respect for Rights of Third Persons); 8.4 (Misconduct).

This Court transmitted the matter to the Circuit Court for Montgomery County on April 21, 2016 and designated the Honorable Michael D. Mason (the "hearing judge") to conduct an evidentiary hearing and make findings of fact and conclusions of law. The hearing judge scheduled the case for a hearing on September 26 and 27, 2016, subject to

---

[1] Effective July 1, 2016, the Maryland Lawyers' Rules of Professional Conduct ("MLRPC") were renamed The Maryland Attorneys' Rules of Professional Conduct ("MARPC") and re-codified, without substantive change, in Title 19 of the Maryland Rules. Because we judge Respondent's conduct against the extant law at the time of his actions, we refer to the MLRPC throughout.

the approval of this Court. On July 25, 2016, this Court granted a motion to extend the time to complete the hearing because it was scheduled to be completed more than 120 days after service on Respondent of the order designating a judge to hear the case. *See* Md. Rule 16-575(a) (noting that the judicial hearing in a disciplinary matter "shall be completed within 120 days after service on the respondent of the order designating a judge.").

Petitioner served the Respondent with discovery requests in the form of Interrogatories, Request for Production of Documents, and Requests for Admissions of Fact and Genuineness of Documents on July 13, 2016. In addition, Petitioner filed various other pre-trial motions; however, Respondent failed to file any response. On September 26, 2016, Petitioner appeared for a hearing on the merits; however, Respondent failed to appear or respond as of that date to any of Petitioner's discovery requests. As a result of Respondent's failure to appear at the hearing on the merits or respond to the request for admissions of fact, the hearing judge deemed admitted Petitioner's Requests for Admissions of Fact and Genuineness of Documents. The hearing culminated with the hearing judge's adoption of Petitioner's Proposed Findings of Fact and Conclusions of Law.

## I.

### *The Hearing Judge's Findings*

The hearing judge made the following findings of fact by clear and convincing evidence. *See* Md. Rule 16-757(c) (noting that "Bar Counsel has the burden of proving the averments of the petition by clear and convincing evidence."). Respondent was admitted to practice law in Maryland on June 23, 1993. He is also admitted to practice in New York

2

and Virginia.[2]  On February 22, 2012, Jeff A. Braun, a resident of Allendale, New Jersey, retained Respondent to represent him in anticipation of litigation involving a dispute between Mr. Braun and his business partner.  Initially, Mr. Braun payed Respondent $5,000 as a retainer.  The events that led up to Mr. Braun's retention of Respondent began in November 2010 when "Mr. Braun [had] purchased a sports park business know as Golden Goal Tournament located in Fort Ann, New York."  The dispute between Mr. Braun and his business partner began in 2011 and led to a lawsuit filed against Mr. Braun (hereinafter, "the Golden Goal litigation," or "New York litigation") on March 5, 2012 in the Supreme Court of the State of New York, Fort Edward, New York (a trial court).  "Fort Edward is approximately 180 miles or 3 hours from Mr. Braun's [New Jersey] residence."

In the Golden Goal litigation, Mr. Braun's business partner requested a Temporary Restraining Order ("TRO") against Mr. Braun.  At the inception of the lawsuit, Respondent explained to Mr. Braun that "this case can be substantially won over the next 20 days." Respondent assured Mr. Braun that "he would have the suit removed to federal court or move for a change of venue to the New York City area (where virtually all of the parties reside)."  Mr. Braun instructed Respondent not to consent to the TRO.  Inconsistent with Mr. Braun's directions, Respondent consented to the TRO, failed to seek removal of the

---

[2] In Petitioner's Proposed Findings of Fact and Conclusions of Law, which the hearing judge adopted in toto, Petitioner has stated in the "Procedural Posture" section that Respondent is a member of the Bar of New York and the District of Columbia but has stated in the "Aggravating and Mitigating Factors" section that Respondent is a member of the Bar of New York and Virginia.  This Court's independent review reveals that Respondent is a member of the Bar of Virginia and not a member of the Bar of the District of Columbia.

3

case to federal court or move for a change of venue to the New York City area and failed to respond to the plaintiff's request for discovery. Although the court found Mr. Braun in contempt of court for failure to respond to discovery, Respondent neither informed Mr. Braun of the discovery violation nor the fact that Respondent had consented to the TRO on Mr. Braun's behalf.

Nathan Fink was a friend of Mr. Braun and also a tax attorney licensed in the state of New Jersey. Apparently, Mr. Braun had communicated with his friend about the legal and business problems confronting Mr. Braun before Mr. Braun retained Respondent. As a result of this prior relationship, Mr. Braun authorized Mr. Fink to communicate with Respondent "so that Mr. Braun could better understand what was going on in the Golden Goal litigation" and "because [Respondent] failed to communicate with Mr. Braun in laymen's terms." Seven months after Mr. Braun retained Respondent, "[i]n September 2012, Respondent withdrew from representation of Mr. Braun." It appears that "Mr. Braun requested that Respondent return his file on September 24, 2012[;] however, Respondent did not do so until November 15, 2012" even though the Golden Goal litigation was ongoing.

After Respondent terminated his representation, he sent a final bill to Mr. Braun for $9,470. Mr. Braun disputed the final bill because he had already paid Respondent approximately $48,000 and, in Mr. Braun's opinion, the invoices were vague. In response to Mr. Braun's refusal to pay the final bill, Respondent "sent threating emails to Mr. Braun and Mr. Fink. [He] threatened to report Mr. Fink to the New York attorney disciplinary

4

authorities, and threaten[ed] to sue both Mr. Braun and Mr. Fink." Although Mr. Braun asked to arbitrate the fee dispute, Respondent rejected the offer of arbitration.

In June of 2013, Respondent sued Mr. Braun and Mr. Fink in the United States District Court for the District of Maryland alleging Breach of Contract with respect to Mr. Braun and Tortious Interference and Unfair Competition with respect to Mr. Fink. Respondent claimed damages in the amount of $1,015,000. Specifically, he alleged "that Mr. Braun owed him attorney's fees (plus interest) of approximately $15,000 and that Mr. Fink had hindered the representation of Mr. Braun and interfered with the attorney/client relationship between Respondent and Mr. Braun."

Allegations contained in the complaint filed in the federal court touched upon "matters from the New York litigation that were privileged due to the attorney/client relationship and the accountant/client relationship." In response to a Motion to Dismiss or, in the Alternative, to Strike, Mr. Braun's attorney argued that the federal court had "no personal jurisdiction over Mr. Braun, no subject matter jurisdiction, and that the Complaint contained privileged information." In formulating a response to the Motion to Dismiss, "Respondent filed affidavits from Mr. Braun's former attorney (Mr. Goodman), former accountant (Mr. Gallo), and from Respondent, all of which revealed privileged information, strategic information related to the Golden Goal litigation, and information intended to disparage Mr. Braun." After Mr. Braun's attorney filed a reply to Respondent's pleading, Respondent withdrew his complaint.

The hearing judge in this disciplinary case had before him, as evidence, the documents that contained the privileged information. The hearing judge noted that when

the District Court judge issued her Memorandum Opinion and Order for dismissal of the federal case, she ordered, among other things, that "the 'majority' of the information that Mr. Braun sought to redact was confidential according to the attorney-client privilege and 'much' of the information [that] Mr. Braun sought to redact was confidential according to the accountant-client privilege."

The plaintiff in the Golden Goal litigation, having obtained the privileged information that Respondent disclosed in his complaint against Mr. Braun, used that information against Mr. Braun in the New York litigation.

Approximately ten months after Respondent had withdrawn as counsel for Mr. Braun in the Golden Goal litigation, Respondent, on July 23, 2013, filed, with the court in Fort Edward, an "Expedited Motion to Show Cause before the New York court hearing the Golden Goal litigation." In that motion, he requested that Mr. Braun show cause why he should not pay the legal fees owed to Respondent and requested that the court investigate Mr. Fink's alleged misconduct. In his motion, Respondent specifically contended that "[a] prior motion on this matter was filed, wisely sealed by this court[,] and eventually withdrawn—but not because anything in that motion was false or factually incorrect. Rather, because it was filed in haste including more personal affect than legal effect which this motion endeavors to address." In addition to the July 23, 2013 Expedited Motion to Show Cause, a previous Expedited Motion was also filed on May 6, 2013, after Respondent had withdrawn from the representation of Mr. Braun. The Fort Edward court did not rule on either Expedited Motion. Eventually, venue in the Golden Goal litigation was transferred from the Fort Edward, New York area to the Manhattan, New York City area.

6

Apparently, in a continuing effort to collect attorney's fees, in January 2014, Respondent wrote to Judge Charles E. Ramos, Judge of the New York State Supreme Court, Commercial Division, and requested that Judge Ramos advise Respondent on how he could best present a Motion to Compel Payment of Fees to the Court. Judge Ramos declined the request.

**II.**

*The Hearing Judge's Conclusions of Law*

The hearing judge adopted Petitioner's proposed conclusions of law and found by clear and convincing evidence that Respondent violated MLRPC 1.2; 1.4; 1.6; 1.9; 1.16(d); 3.1; 4.4; 8.4(a) and 8.4(d).

**Conclusions of Law**

**Rule 1.2 Scope of Representation and allocation of authority between client and lawyer**

Rule 1.2(a) provides that a lawyer "shall abide by a client's decisions concerning the objectives of the representation and, when appropriate, shall consult with the client as to the means by which they are to be pursued." Further, "[a] lawyer may take such action on behalf of the client as is impliedly authorized to carry out the representation. A lawyer shall abide by a client's decision whether to settle a matter." An attorney violates Rule 1.2(a) if he or she fails to inform a client of the status of his or her case, thereby denying the client the ability to make informed decisions. *Attorney Grievance* [*Comm'n*] *v. Hamilton,* 444 Md. 163, 182, 118 A.3d 958, 968 (2015).

In order for a lawyer to abide by a client's decisions concerning representation, the client must be able to make informed decisions as to the objectives of the representation. *Id.* at 182, 968–69. In order for a client to make informed decisions, an attorney must give the client honest updates regarding the status of his or her case. *Id.,* citing *Attorney Grievance* [*Comm'n*] *v. Shapiro,* 441 Md. 367, 380, 108 A.3d 394, 402 (2015). An attorney may violate Rule 1.2(a) if he or she fails to follow the instructions of the client. *Attorney Grievance* [*Comm'n*] *v. Sperling,* 432 Md. 471, 493, 69 A.3d 478, 490–91 (2013) (quoting *Attorney Grievance* [*Comm'n*] *v. Reinhardt,* 391 Md. 209, 220, 222, 892 A.2d,

7

533, 539–40 (2006) (internal quotations omitted).

In this case, Respondent violated Rule 1.2 when he failed to abide by Mr. Braun's instructions not to consent to the Temporary Restraining Order (hereinafter, "TRO"). He also failed to file a motion to change venue to New York City, and he failed to have the case removed to federal court. *See* Petitioner's Exhibit 1, Tab 1. Further, Respondent failed to inform Mr. Braun that Respondent agreed to produce Mr. Braun's tax returns to opposing counsel. When such tax returns were not produced, the court held Mr. Braun in contempt of court. *Id.*

## Rule 1.4 Communication

Rule 1.4 provides that:
  (a) A lawyer shall:
     (1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(f), is required by these Rules;
     (2) keep the client reasonably informed about the status of the matter;
     (3) promptly comply with reasonable requests for information; and
     (4) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Maryland Lawyers' Rules of Professional Conduct or other law.
  (b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

Attorneys violate Rule 1.4 when they fail to communicate with their clients and keep them informed of the status of their legal matters. *Attorney Grievance* [*Comm'n*] *v. Kwarteng,* 411 Md. 652, 658, 984 A.2d 865, 868–69 (2009). In *Attorney Grievance* [*Comm'n*] *v. De La Paz,* Respondent in that matter failed to tell his client that his case had been dismissed, which fact the client learned only after traveling to the courthouse to inquire. 418 Md. 534, 554, 16 A.3d 181, 192–93 (2011). Similarly, in *Attorney Grievance* [*Comm'n*] *v. Fox,* the attorney violated Rule 1.4 when he did not know that the client's case was dismissed and accordingly did not communicate that fact to the client. 417 Md. 504, 517, 11 A.3d 762, 769 (2010). In *Attorney Grievance* [*Comm'n*] *v. Thomas,* the attorney violated Rule 1.4 when he ceased communicating with the client after he told the client not to appear at his removal (deportation) hearing, and then failed to tell the client that he had been ordered removed *in absentia.* 440 Md. 523, 553–54, 103 A.3d 629, 647 (2014).

In the case at bar, Respondent violated Rule 1.4(a) when he failed to inform Mr. Braun that he had consented to the TRO. *See* Petitioner's Exhibit

1 at 18. He also violated Rule 1.4(a) by failing to tell Mr. Braun that he needed to produce his tax returns, and later, after he failed to do so, that Mr. Braun had been found in contempt of court. *Id.* at 21. Respondent violated Rule 1.4(b) because he failed to explain what was happening in the Golden Goal litigation in a manner that Mr. Braun could understand. *Id.* at 25. As such, Mr. Braun had enlisted the help of his friend, attorney Nathan Fink, to communicate with Respondent. *Id.* at 24–25.

## Rule 1.6 Confidentiality of information

"A lawyer shall not reveal information relating to representation of a client unless the client gives informed consent [and] the disclosure is impliedly authorized in order to carry out the representation[.]" Rule 1.6(a). Only the client has the power to waive the attorney-client privilege. *Newman v. State,* 384 Md. 285, 863 A.2d 321 (2004). The importance of the attorney client privilege has been described as follows:

> By turns both sacred and controversial, the principle of the confidentiality of client information is well-embedded in the traditional notion of the Anglo-American client-lawyer relationship. CHARLES W. WOLFRAM, MODERN LEGAL ETHICS § 6.1.1, at 242 (1986). "The professional rules ... [embrace] a *broad ethical duty* not to divulge information about a client." *Id.* (emphasis added). An attorney's duty of confidentiality applies not only to privileged "confidences," but also to unprivileged secrets; it "exists without regard to the nature or source of the information or the fact that others share the knowledge." *Perillo v. Johnson,* 205 F.3d 775, 800 n. 9 (5th Cir. 2000) (quoting ABA Model Code of Professional Responsibility Canon 4, DR 4-101 and EC 4-4) (internal quotation marks and alterations omitted). "The confidentiality rule applies not merely to matters communicated in confidence by the client[,] but also *to all information relating to the representation, whatever its source.*" *Id.* at 800 n. 10 (quoting ABA Model Rules of Professional Responsibility 1.6 & cmt.5) (emphasis added); *accord, United States v. Edwards,* 39 F. Supp.2d 716, 724 (M.D. La. 1999) (collecting authorities); *United States v. Mackey,* 405 F. Supp. 854, 860 (E.D.N.Y. 1975) (Weinstein, 1.) (emphasizing breadth of attorney's obligation).

*In re Gonzalez,* 773 A.2d 1026, 1030-1031 (D.C. 2001).

In this case, Respondent violated the sacred and well-embedded concept embodied by Rule 1.6 by disclosing information that Respondent obtained by way of his representation of Mr. Braun in the Golden Goal litigation. He disclosed this information in a public forum, *i.e*., in a lawsuit brought in federal court, in order to recoup money that he believed Mr. Braun owed him. Mr. Braun did not consent to these disclosures. *See* Affidavit of

9

Jeff Braun in Support of Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2), at Petitioner's Exhibit 1, Tab 15, page 73–74, § 13. Mr. Braun had to hire an attorney in Maryland to assist him not only with the underlying controversy, but with getting the privileged information redacted from the record. *See* Petitioner's Exhibit 1 at Tabs 15 and 16. Judge Hollander held that the "majority" of the information that Mr. Braun sought to redact was confidential according to the attorney-client privilege and "much" of the information Mr. Braun sought to redact was confidential according to the accountant-client privilege. *See* Petitioner's Exhibit 1, Tab 19, pages 142–143.

### Rule 1.9. Duties to former clients

Rule 1.9 provides that:

> (c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:
>
>> (1) use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known; or
>> (2) reveal information relating to the representation except as these Rules would permit or require with respect to a client.

In *Attorney Grievance* [*Comm'n*] *v. Siskind,* the Court of Appeals held that an attorney violated Rule 1.9 when he filed a suit sounding in contract against a former client, a corporation, which was an entity he created, over a business transaction he helped construct by creating the relevant documents central to the contract suit. 401 Md. 41, 64, 930 A.2d 328, 342 (2007). In this case, Respondent revealed confidential information of his former client, Mr. Braun, to Mr. Braun's disadvantage, to wit: he filed three affidavits in federal court, via the electronic filing system, that were available to the public to view. *See* Petitioner's Exhibits 15, 16, and 22–26. The disclosure of this privileged information hurt Mr. Braun in the Golden Goal litigation. *Id.* at Tab 1, pages 11–12.

### Rule 1.16(d) Termination of Representation

When the lawyer/client relationship ends, Rule 1.16(d) requires that:

> ([d]) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers

relating to the client to the extent permitted by other law.
In *Attorney Grievance* [*Comm'n*] *v. Landeo,* 446 Md. 294, 335–337, 132 A.3d 196, 220–221 (2016), an attorney violated Rule 1.16(d) after she was terminated by two different clients. In both cases, she took several months to transmit her clients' files to their new attorneys when they had active applications for benefits in process with United States Citizenship and Immigration Services. *Id.* She did not refund the clients' fees until the eve of the trial in her attorney grievance matter. *Id.*

In Mr. Braun's case, it was Respondent who ended the attorney-client relationship, but he took two months to return Mr. Braun's file to him in its entirety. *See* Petitioner's Exhibit 1 at ¶¶27–28. The delay in receiving his complete file was particularly damaging to Mr. Braun because the Golden Goal matter was, and still is, being actively litigated. It also took Respondent two months to send Mr. Powers Respondent's final bill. *See also* Final Invoice from Respondent to Mr. Braun dated November 15, 2012, in the record at Petitioner's Exhibit 1, Tab 13. Respondent's delay in transmitting Mr. Braun's file and final invoice to him is in violation of Rule 1.16(d).

## Rule 3.1. Meritorious claims and contentions

"A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous." *See* Rule 3.1. In *Attorney Grievance* [*Comm'n*] *v. Mixter,* the Court upheld the trial court's finding that Respondent had violated Rule 3.1 when he attempted to enforce over one-hundred and twenty unenforceable subpoenas through meritless motions to compel in order to coerce his opposing parties into compliance with his excessive discovery requests. 441 Md. 416, 511, 109 A.3d 1, 58 (2015). In another case where an attorney was found to have violated Rule 3.1, the Court held that "[t]he legal process should never be used as the Respondent did here, *i.e.*, merely [as] a device to apply pressure to the other parties . . . ". *Attorney Grievance* [*Comm'n*] v. *Gisriel,* 409 Md. 331, 356–57, 974 A.2d 331, 346 (2009). Here, Respondent violated Rule 3.1 when he used the legal process as "a device to apply pressure" to Mr. Braun. After being unsuccessful in recouping his fees by filing motions with the New York courts, Respondent sued Mr. Braun and Mr. Fink in the U.S. District Court for the District of Maryland, a court which had no personal or subject matter jurisdiction over either of them. *See* Petitioner's Exhibit 1, Tabs 15–16. Mr. Braun's and Mr. Fink's attorneys filed Motions to Dismiss in which they pointed out the flaws in Respondent's case.

Respondent then filed his own Motion to Withdraw, stating that the New York courts were handling his motion for attorney's fees, an avenue which was available to him previously. Respondent's claims against Mr. Braun and Mr. Fink plainly lacked subject matter and personal jurisdiction,

and were filed in an effort to pressure Mr. Braun to pay his final bill. *Id.* Respondent's use of the federal court system of Maryland to collect $9,470.00 in overdue legal fees clearly violated Rule 3.1.

## Rule 4.4. Respect for rights of third persons
Rule 4.4 provides that:
  (a) In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that the lawyer knows violate the legal rights of such a person.

In *Attorney Grievance* [*Comm'n*] *v. Mixter,* the Court found that the attorney violated Rule 4.4(a) when, during litigation in which he represented himself, Mixter had attempted "to harass and intimidate the defendants" by requesting their entire driving histories under "a multitude of disingenuous arguments[.]" As the Circuit Court Judge in *Mixter* stated, the driving records "had absolutely nothing to do with the pending claim for defamation and that the subpoena was aimed solely at harassing the defendant[s]." Mixter intentionally pursued the defendants' driving records without basis, causing his opposition to use time and resources to obtain protective orders as to their driving records, and delaying litigation, thereby violating Rule 4.4(a). 441 Md. at 522, 109 A.3d at 65.

In the instant case, Respondent, in representing himself in his case against Mr. Braun and Mr. Fink, filed his collections case in the U.S. District Court of Maryland, which was a tactic that had "no substantial purpose other than to embarrass, delay, or burden" Mr. Braun and Mr. Fink. Respondent knew, or should have known, that the U.S. District Court of Maryland had neither personal nor subject matter jurisdiction over Mr. Braun and Mr. Fink, both of whom lived in New Jersey, worked in New Jersey and New York, and participated in the Golden Goal litigation in New York.

Additionally, the act of suing Mr. Fink, who is Mr. Braun's friend and long-time tax attorney, was also an act with "no substantial purpose other than to embarrass, delay, or burden" Mr. Fink. Respondent sued his former client's friend for $1,000,000 for "willfully" interfering with Respondent's contractual relationship with Mr. Braun, "clandestinely instructing his client and other professionals to take actions materially affecting the New York litigation," and causing Respondent to be "damaged in the form of lost income and lost time and in amounts to be proved at trial." *See* Complaint, in the record at Petitioner's Exhibit 1, Tab 23. Respondent also sued Mr. Fink for "taking over aspects of the New York litigation and by competing with Mr. Powers in so doing." *Id.* Finally, Respondent states in his complaint that "Mr. Fink has and continues to enjoy a lucrative financial relationship with Mr. Braun and his intentional interference ... was a part of his campaign of unfair competition." *Id.* The above quoted statements indicate that

Respondent valued his potential financial enrichment from Mr. Braun far more so than keeping Mr. Braun's confidences and respecting Mr. Braun's choice regarding how, if at all, he chose to involve Mr. Fink in his litigation.

**Rule 8.4. Misconduct**
It is professional misconduct for a lawyer to:
>    (a) violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
>    * * *
>    (d) engage in conduct that is prejudicial to the administration of justice;

Rule 8.4(a) makes it professional misconduct for a lawyer to violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another. Rule 8.4(a) is violated when other Rules of Professional Conduct are breached. *Attorney Grievance* [*Comm'n*] *v. Gerace,* 433 Md. 632, 645, 72 A.3d 567, 575 (2013). As noted above and further described below, Respondent violated several Rules of Professional Conduct and therefore, also violated Rule 8.4(a).

Finally, Rule 8.4(d) states that it is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice. Conduct prejudicial to the administration of justice is that which "reflects negatively on the legal profession and sets a bad example for the public at large[.]" *Attorney Grievance* [*Comm'n*] *v. Goff,* 399 Md. 1, 22, 922 A.2d 554, 567 (2007). In this case, Respondent's conduct is unquestionably prejudicial to the administration of justice and has brought the legal profession into disrepute. Respondent, acting as Mr. Braun's former lawyer, sued Mr. Braun and Mr. Braun's friend for $1,015,000.00 collectively, in a federal court in a state in which neither defendant resided or had any contacts with, in an effort to collect $9,470.00 in attorney's fees. Mr. Braun and Mr. Fink had to hire attorneys in Maryland to defend themselves. The Complaint and several affidavits filed in support of his opposition to Mr. Braun's Motion to Dismiss revealed confidential information that was subject to the attorney-client and accountant-client privilege. After [Mr. Braun's] attorney filed a response, Respondent withdrew the complaint, and stated that he would pursue the matter in New York. His conduct undeniably brings the legal profession into disrepute.

### III.
*Standard of Review*

In attorney discipline proceedings, "this Court has original and complete jurisdiction." *Attorney Grievance Comm'n v. Page*, 430 Md. 602, 626, 62 A.3d 163, 177 (2013). Upon review of the findings of facts, this Court accepts "the hearing judge's findings of fact unless shown to be clearly erroneous[.]" *Attorney Grievance Comm'n v. Blair*, 440 Md. 387, 400, 102 A.3d 786, 793 (2014). Where no exceptions to the hearing judge's findings of fact are filed, this Court "may treat the findings of fact as established for the purpose of determining appropriate sanctions." *Attorney Grievance Comm'n v. Gray*, 444 Md. 227, 250, 118 A.3d 995, 1008 (2015). We review the hearing judge's conclusions of law *de novo*. *Attorney Grievance Comm'n v. Storch*, 445 Md. 82, 89, 124 A.3d 204, 208 (2015).

Neither party has taken exception to the hearing judge's findings of facts. Therefore, we deem Judge Mason's findings of fact as established by clear and convincing evidence. *See* Rule 16-727(c); *see also Gray*, 444 Md. at 250, 118 A.3d at 1008. As to his conclusions of law, the hearing judge determined that Respondent violated MLRPC 1.2, 1.4, 1.6, 1.9, 1.16(d), 3.1, 4.4, and 8.4(a) and 8.4(d). Based upon our independent review of the record, we are satisfied that the facts support the hearing judge's conclusions of law.

*Discussion*

Rule 1.2(a) provides that a lawyer "shall abide by a client's decisions concerning the objectives of the representation and, when appropriate, shall consult with the client as to the means by which they are to be pursued." Further, "[a] lawyer may take such action on behalf of the client as is impliedly authorized to carry out the representation." An

14

attorney's failure to inform a client of the status of his or her case, which denies the client the ability to make informed decisions may be a violation of Rule 1.2(a). *See Attorney Grievance Comm'n v. Hamilton*, 444 Md. 163, 182, 118 A.3d 958, 968 (2015). Additionally, an attorney may violate Rule 1.2(a) if he or she fails to follow the client's instructions. *See Attorney Grievance Comm'n v. Sperling*, 432 Md. 471, 493, 69 A.3d 478, 490-91 (2013). During his representation of Mr. Braun, Respondent failed to abide by his client's instructions regarding the course of action of the litigation, specifically as it related to the TRO and the change of venue of the court. Additionally, Respondent failed to inform his client that Respondent had agreed to produce the client's tax returns to opposing counsel. Respondent's client was later held in contempt when he failed to produce the tax documents.

Under Rule 1.4, attorneys are required to keep their clients informed of the status of the case. Rule 1.4 provides that:

> (a) A lawyer shall:
> (1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(f), is required by these Rules;
> (2) keep the client reasonably informed about the status of the matter;
> (3) promptly comply with reasonable requests for information; and
> (4) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Maryland Lawyers' Rules of Professional Conduct or other law.
>
> (b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

In *Attorney Grievance Comm'n v. Fox*, 417 Md. 504, 517, 11 A.3d 762, 769 (2010), the attorney violated Rule 1.4 when he was unaware that his client's case had been dismissed and thus did not communicate this fact to the client. Here, Respondent failed to inform his client that Respondent had consented to the TRO. Respondent also failed to tell Mr. Braun that he needed to produce tax returns to the opposing party. Further, Respondent violated Rule 1.4 when he failed to communicate with his client in a way that his client could understand. Respondent's failure in this respect made it necessary for Mr. Braun to enlist the help of an attorney friend.

Respondent's conduct *during* his representation of Mr. Braun demonstrated clear violations of the Maryland Lawyers' Rules of Professional Conduct; however, his most egregious actions occurred *after* his representation of Mr. Braun. Casting the darkest shadow over Respondent's conduct are his violations of Rules 1.6 and 1.9. Rule 1.6 provides that "[a] lawyer shall not reveal information relating to representation of a client unless the client gives informed consent [and] the disclosure is impliedly authorized in order to carry out the representation[.]" The attorney-client privilege belongs to the client; the attorney cannot legally waive the privilege on behalf of the client without the client's consent. *See Newman v. State*, 384 Md. 285, 301, 863 A.2d 321, 330 (2004). Petitioner has not cited, and we have not found, a Maryland case in which an attorney violated Rule 1.6 by disclosing, without consent, information that was subject to the attorney-client privilege.

The Supreme Court of Appeals of West Virginia, however, has had occasion to address this type of violation. In *Lawyer Disciplinary Bd. v. Farber*, 488 S.E.2d 460

16

(W.Va. 1997), the attorney of record, Farber, filed a motion to withdraw as counsel in a case where his client, also an attorney, had entered a plea of *nolo contendere* to a misdemeanor charge of obstructing an officer in the performance of duty. In the motion, Farber contended that his client either had testified falsely at the *nolo contendere* plea hearing or would testify falsely at an up-coming hearing at which the client intended to set aside the plea. *Id.* at 462. In an affidavit attached to the motion to withdraw as counsel, Farber revealed that the client had expressed a belief that he would have been convicted of battery had the issue been presented to the jury. *Id.* at 462-63. This disclosure concerning the apparent admission of a battery had been made to Farber during the course of the attorney-client relationship. *Id.* at 463. Farber also sent a letter to his client, which stated, in part, "I'm going to do everything in my power to even the score with you." *Id.* The Supreme Court of Appeals of West Virginia explained that Farber's statements "revealed confidential information, were potentially to the disadvantage of [his client] and were threatening." *Id.* at 466. In the case at bar, Respondent disclosed, without consent, information that he had obtained during the course of his representation of Mr. Braun. Respondent disclosed the information in a public forum via the federal court's electronic filing system, which enabled the opposing party in the Golden Goal litigation to use that information against Mr. Braun. Additionally, when Respondent was unsuccessful at resolving the dispute regarding his legal fees, Respondent wrote to Mr. Braun and Mr. Fink, stating:

> Dear Jeff and Nate,
>
> Power can be used.

17

Power can be abused.

In my opinion, you both have abused the considerate financial and legal powers you hold.

I gave you every opportunity to just let me go and leave you both to your own devices.

You ignored every outreach and thereby compelled this action.

So, let us get another opinion of my entitlement to payment and of your joint conduct.

We can settle and resolve this immediately by payment – in full – of my fees.

And Nate, if you want to fight this, here's my strategy: The court can investigate this and will likely find that you tortuously [*sic*] interfered (and the NY bar will have its role). I will use the findings of my NY judges and my NY bar and then use them in civil action for damages and an exemplary/punitive award against you.

Jaime Powers

Rule 1.9 provides, in relevant part, that:

(c) An attorney who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:

(1) use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known; or

(2) reveal information relating to the representation except as these Rules would permit or require with respect to a client.

An attorney violated Rule 1.9 when he filed a breach of contract action against a former client, a corporation, which the attorney had previously represented. *Attorney Grievance Comm'n v. Siskind*, 401 Md. 41, 930 A.2d 328 (2007). The suit against the former client involved enforcement of a purchase agreement, which the attorney had drafted in his legal representation of the corporate client. *Id.* As we previously discussed, here, Respondent

18

revealed confidential information related to his former client in the complaint that he filed in federal court. Upon Mr. Braun's filing of a motion to dismiss Respondent's complaint, Respondent filed affidavits from Mr. Braun's former attorney, Mr. Braun's former accountant, and Respondent. The affidavits revealed information related to Mr. Braun's strategy in the pending Golden Goal litigation, information Respondent had obtained from conversations with Mr. Braun's accountants, as well as information Respondent had acquired in his capacity as Mr. Braun's attorney. Furthermore, the affidavits revealed information that was intended to disparage Mr. Braun.

> Rule 1.16(d) provides that:
>
> Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

An attorney may violate Rule 1.16(d) when, following the termination of representation, the attorney delays in returning the case file to the client. *See Attorney Grievance Comm'n v. Landeo*, 446 Md. 294, 335-37, 132 A.3d 196, 220–21 (2016). Respondent violated Rule 1.16(d) when, after he ended the attorney-client relationship with Mr. Braun, he delayed in returning his client's file. Respondent also delayed in transmitting his client's final invoice.

Rule 3.1 provides that "[a] lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous. . .". In *Attorney Grievance Comm'n v. Grisriel*, 409 Md. 331, 356–57, 974 A.2d 331, 346

19

(2009), we held that where an attorney used a "shotgun approach to get everyone's 'attention'" by including individuals in a lawsuit without any basis for doing so, the attorney violated Rule 3.3. We imposed a sanction for the attorney's misconduct and explained that "[t]he legal process should never be used as the [attorney] did here, *i.e.* merely [as] a device to apply pressure to the other parties[.]" Here, Respondent did just that: he filed suit against his now-former client and a third party in a federal court that lacked personal and subject matter jurisdiction over the defendants, merely in an effort to extract legal fees by any means. Respondent knew or should have known that the federal court lacked personal and subject matter jurisdiction over his former client and the third party. Respondent apparently did know that the District Court of Maryland lacked jurisdiction because Respondent withdrew his pleadings from that court and pursued the parties in the New York court system, which was an avenue available to him from the outset. Furthermore, Respondent sued the third party for $1,000,000 based on a claim of contractual interference.

Rule 4.4(a) provides that:

(a) In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that the lawyer knows violate the legal rights of such a person.

In *Attorney Grievance Comm'n v. Mixter,* 441 Md. 416, 522, 109 A.3d 58, 65 (2015), we held that an attorney violated Rule 4.4 when he "intentionally pursued the defendants' driving records without basis, causing his opposition to use time and resources to obtain protective orders as to their driving records, and delaying litigation, thereby violating Rule

20

4.4(a)." In the case at bar, Respondent filed suit against his former client and a third-party as a means of compelling his former client to pay Respondent's outstanding legal bill. Respondent's former client as well as the third party incurred legal fees as a result of having to defend against Respondent's suit in Maryland. Respondent's tactics had "no substantial purpose other than to embarrass, delay, or burden" his former client and the third party.

Rule 8.4 provides, in relevant part, that:

It is professional misconduct for a lawyer to:
(a) violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
   *   *   *
(d) engage in conduct that is prejudicial to the administration of justice.

An attorney violates Rule 8.4(a) when he or she violates other Rules of Professional Conduct. *See Attorney Grievance Comm'n v. Gerace*, 433 Md. 632, 645, 72 A.3d 567, 575 (2013). Furthermore, an attorney who engages in conduct that is prejudicial to the administration of justice violates Rule 8.4(d). We have described conduct prejudicial to the administration of justice as that which "reflects negatively on the legal profession and sets a bad example for the public at large." *Attorney Grievance Comm'n v. Goff*, 399 Md. 1, 22, 922 A.2d 554, 567 (2007). Respondent's act of filing suit in a federal court in a state where neither defendant resided nor had any contacts, in an effort to collect $9,470 of legal fees, is conduct that brings the legal profession into disrepute. Respondent caused both defendants to incur legal fees to defend against a complaint that never should have been filed in Maryland and that he later withdrew. As discussed, he disclosed, in a public forum, confidential information that was obtained during his prior representation and subject to

21

the attorney-client privilege and the accountant-client privilege.  This conduct denigrates the legal profession.

## IV.

*Sanction*

When deciding the proper sanction for Respondent's misconduct, we are well aware that "the purpose of attorney discipline is to protect the public, not punish the attorney." *Attorney Grievance Comm'n v. Framm*, 449 Md. 620, 664-65, 144 A.3d 827, 853 (2016). Additionally, we remain mindful that attorney discipline is "directed at deterring other lawyers from violating the Maryland Lawyers' Rules of Professional Conduct and to maintain the integrity of the legal profession." *Mixter*, 441 Md. at 527, 109 A.3d at 68. The appropriate sanction for Respondent's misconduct is a question of whether the sanction is "commensurate with the nature and gravity of the violations and the intent with which they were committed." *Attorney Grievance Comm'n v. Moore*, 451 Md. 55, 88, 152 A.3d 639, 658 (2017). When determining the proper sanction, we measure the attorney's misconduct against any mitigating and aggravating factors. *Framm*, 449 Md. at 664, 144 A.3d at 854.

The Petitioner recommends that we suspend Respondent from the practice of law indefinitely due to the severity of his misconduct and the presence of multiple aggravating factors. The Petitioner contends that Respondent knowingly and intentionally violated the Rules, as evidenced, for example, by his correspondence with Mr. Braun and Mr. Fink. Further, the Petitioner notes that even after Mr. Braun filed a complaint against Respondent with the Attorney Grievance Commission of Maryland, Respondent continued to litigate

22

the fee dispute in the New York courts. Respondent recommends that we impose a sanction no greater than a reprimand because of what he characterizes as mitigating factors affecting his misconduct. However, we conclude that the aggravating factors outweigh the mitigating factors even assuming that those mitigating factors had been found by the hearing judge.

At oral argument, before this Court, Mr. Powers urged us to find that an indefinite suspension would be inappropriate. Mr. Powers raised his personal circumstances as mitigating factors. He indicated that he missed the discovery deadline and the disciplinary hearing because they occurred during a difficult time in his life when his wife had left him, his daughter refused to speak to him, and he had recently lost his brother-in-law, father, mother, and dog. It is important to note that Mr. Powers did not timely present any of these mitigating factors to the hearing judge in this case. Moreover, the hearing judge did not find any mitigating factors.

> We have recognized the following mitigating factors in imposing sanctions:
>
> absence of a prior disciplinary record; absence of a dishonest or selfish motive; personal or emotional problems; timely good faith efforts to make restitution or to rectify consequences of misconduct; full and free disclosure to disciplinary board or cooperative attitude toward proceedings; inexperience in the practice of law; character or reputation; physical or mental disability or impairment; delay in disciplinary proceedings; interim rehabilitation; imposition of other penalties or sanctions; remorse; and finally, remoteness of prior offenses.

*Attorney Grievance Comm'n v. Hodes*, 441 Md. 136, 209, 105 A.3d 533, 576 (2014) (internal citation omitted). Under Md. Rule 16-757(b), at a disciplinary hearing "the respondent has the burden of proving an affirmative defense or a matter of mitigation or

23

extenuation by a preponderance of the evidence." *Attorney Grievance Comm'n v. Christopher*, 383 Md. 624, 638, 861 A.2d 692, 700 (2004).

We have said that in order "[f]or a mental disability to be considered as a potential mitigating factor, there must be evidence that it existed and caused the attorney's misconduct." *Attorney Grievance Comm'n v. Kremer*, 432 Md. 325, 341, 68 A.3d 862, 871–72 (2013). Mr. Powers' reliance upon the personal losses that he sustained in his explanation to this Court do not mitigate the sanction to be imposed in this case. He offers no compelling extenuating circumstances based upon supporting testimony from medical professionals or evidence of a medical condition or treatment that caused his intentional misconduct. *See Attorney Grievance Comm'n v. Palmer*, 417 Md. 185, 212–13, 9 A.3d 37, 53 (2010) (reasoning that, "any alleged psychological issues Respondent was dealing with contemporaneously with his misconduct do not rise to a level sufficient to meet *Vanderlinde's* requirements, and therefore, without more, do not mitigate the sanction here to less than disbarment"); *Attorney Grievance Comm'n v. Guida*, 391 Md. 33, 62, 891 A.2d 1085, 1102 (2006) (determining that, "while Respondent suffered from a severe major depression at the relevant times, his depression (and related sequelae) was not so great that it satisfied the *Vanderlinde* threshold for mitigation of the sanction for his violations of the MRPC"); *Attorney Grievance Comm'n v. Goodman*, 381 Md. 480, 496, 850 A.2d 1157, 1167 (2004) (finding, despite respondent's claims that physical problems, emotional problems, or any other host of problems he noted, caused or mitigated his behavior in this case, "the record in this case does not demand or even support a finding that 'the most serious and utterly debilitating mental or physical health conditions' caused Respondent's

24

inability to conform his conduct in accordance with the law and with the rules."); *see also*

*Attorney Grievance Comm'n v. Kovacic*, 389 Md. 233, 236, 884 A.2d 673, 675 (2005)

(holding that bar counsel's recommendation of indefinite suspension would be imposed as

"respondent did not appear for the hearing and thus the reasons, or motive, for her inaction

were not, and could not have been explored. . . . While the respondent represented that she

was suffering from a medical condition [at oral argument] that caused her to cease

practicing law and made her return to the practice in the foreseeable future uncertain, the

respondent has failed to submit documentation to confirm its existence, despite having been

requested, and having agreed, to do so.").

Having found no basis for mitigation, the hearing judge found five aggravating

factors. *See Sperling*, 432 Md. at 495-96, 69 A.3d at 492 (citing aggravating factors from

Standard 9.22 of the American Bar Association Standards for Imposing Lawyer Sanctions).

Respondent displayed dishonest or selfish motives in pursuing litigation against his former

client in an attempt to collect $9,470 in legal fees, basing the litigation on the belief that

Mr. Fink was interfering with Respondent's representation of Mr. Braun. In addition,

Respondent violated multiple disciplinary Rules, specifically 1.2, 1.4(a) and (b), 1.6,

1.9(c), 1.16(d), 3.1, 4.4(a), 8.4(a) and (d). Respondent failed to acknowledge the wrongful

nature of his misconduct. Rather than provide evidence of remorse or an appreciation for

the impropriety of his conduct, he responded to the Petition for Disciplinary or Remedial

Action by describing his actions as "lawful and undertaken in direct response to, and as a

consequence of Mr. Braun's intentional misconduct[,]" stating that he would "show how

the revelations made by Respondent were integral to the dispute that Respondent had with

Mr. Braun and all as authorized under both Maryland and New York ethical rules and obligations." Respondent's experience in the practice of law is an aggravating factor because he has been a member of the Maryland Bar for twenty-three years and he is also a member of the Bar of New York and Bar of Virginia. Finally, Respondent demonstrated indifference to making restitution because he has maintained that he has done nothing wrong and, during these disciplinary proceedings, continued to pursue litigation against his former client and a third party.

Turning now to the case law, we must determine the proper sanction in light of our goals to protect the public, deter intolerable conduct, and maintain the integrity of the profession. *See Mixter*, 441 Md. at 527, 109 A.3d at 68. In *Framm*, we disbarred an attorney who had violated Rules 1.1, 1.2, 1.4, 1.5, 1.7, 1.15, 3.3, and 8.4(a), (c) and (d) as well as former Maryland Rule 16-606.1. 449 Md. at 668, 144 A.3d at 855. In that case, the attorney failed to properly advise her client of the cost-benefit analysis of pursuing litigation based upon the client's limited potential benefits. *See id.* at 645, 144 A.3d at 842. Like Respondent in the case before us, in *Framm,* the attorney failed to abide by her client's wishes and took a contrary position to that of her client. *Id.* at 646, 144 A.3d at 843. Furthermore, in *Framm*, the attorney made material misrepresentations to the court about her client's mental capacity in a fee-related suit, even when those misrepresentations were "directly contrary to the position she advanced before the court in the [client's] divorce and guardianship cases." *Id*. at 657, 144 A.3d at 849. Among the many instances of misconduct in *Framm*, we noted that the attorney's most egregious act was that she "lied

26

to and deceived the court to the detriment of her former client for her own monetary gain."
*Id*. at 668, 144 A.3d at 855.

Most recently in *Moore*, we sanctioned an attorney with indefinite suspension for violating Rules 1.1, 1.2(a), 1.3, 1.4(b), 1.16(d), 8.4(a) and (d). 451 Md. at 92, 152 A.3d at 661. In *Moore*, the attorney failed to make a settlement demand in a personal injury matter upon the client's request, failed to keep his client informed of the status of her case, as well as failed to timely inform the client that he was closing his law practice. *Id*. at 79–82, 152 A.3d at 653–55. Notwithstanding the attorney's twenty-two years in the practice of law and his nearly year-long neglect of the client's personal injury matter, we noted there that the attorney's conduct was "isolated to one client, who seemingly 'fell through the cracks' during [the attorney's] transition from the bar to [the position of Administrative Law Judge]." *Id*. at 91, 152 A.3d at 660. We concluded that the sanction of disbarment would be too severe in *Moore*. *Id.*

We recognize that, unlike *Framm*, Respondent's violations neither represent a pattern of misconduct, nor involve intentional deceit to the court. Respondent's conduct more closely aligns with the circumstances in *Moore* in that the violations stemmed from an isolated case. *Framm*, nevertheless, informs our analysis because Respondent acted to the detriment of his former client in his dogged attempts to recoup an alleged financial loss. *See Framm*, 449 Md. at 668, 144 A.3d at 855. Given the severity of Respondent's conduct, this case was a close call between our imposing the sanction of disbarment or indefinite suspension.

Respondent's violations, particularly of Rules 1.6 and 1.9, seriously undermine his integrity as a member of this Bar. Respondent has demonstrated not only indifference towards the attorney discipline process, but an inexplicable absence of serious regard for his ethical duties to former clients. *See Attorney Grievance Comm'n v. Lee*, 393 Md. 385, 415, 903 A.2d 360, 378 (2006) ("Respondent presents no evidence of remorse or appreciation of the serious impropriety of his conduct."). We are, however, constrained by the facts before us and our jurisprudence. We conclude that indefinite suspension is the appropriate sanction.

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS PURSUANT TO MARYLAND RULE 19-709, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST JAMES ALOYSIUS POWERS.**